IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

M CONSULTING AND
EXPORT, LLC,                            *

      Plaintiff,                        *

         v.                            *     Civil Action No. RDB-13-1730

TRAVELERS CASUALTY                      *
INSURANCE COMPANY
OF AMERICA,                             *

      Defendant.                        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff M Consulting and Export, LLC ("Plaintiff") brings the presently pending action against Defendant Travelers Casualty Insurance Company of America ("Defendant" or "Travelers") in order to recover under a commercial general liability insurance policy. This case arises out of an agreement between Wine & Spirits Expo, LLC, d/b/a Cork N Bottle ("Cork N Bottle") and Plaintiff that obligated Cork N Bottle to provide sparkling wine for international shipment. Only part of the order arrived at its destination. Plaintiff subsequently filed a Maryland state court action against Cork N Bottle and obtained a default judgment. Plaintiff then filed this case against Defendant Travelers, which had insured Cork N Bottle. Defendant Travelers now moves for summary judgment, arguing that the insurance policy does not cover Plaintiff's loss and, alternatively, that coverage is barred by various exclusions contained in the insurance policy. The parties' submissions have been

1

reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant Travelers Casualty Insurance Company of America's Motion for Summary Judgment (ECF No. 22) is GRANTED.

## BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

This case arises out of a business transaction involving the purchase and shipment of sparkling wine. Specifically, Wine & Spirits Expo, LLC, d/b/a Cork N Bottle ("Cork N Bottle") contracted with Plaintiff M Consulting and Export, LLC ("Plaintiff") to provide five hundred (500) cases of sparkling wine for shipment to West Africa. Def.'s Mem. Supp. Mot. Summ. J. 1, ECF No. 22-1. Upon arrival, however, only some three hundred (300) crates were in the shipping container. Ogbebor Dep. 20:17-19, ECF No. 22-4. Plaintiff filed a lawsuit against Cork N Bottle in the Circuit Court of Maryland for Baltimore City for breach of contract and negligence, and obtained a default judgment after Cork N Bottle failed to answer. Pl.'s Opp. 1, ECF No. 25.

Thereafter, Plaintiff filed the currently pending action against Defendant Travelers Casualty Insurance Company of America ("Defendant" or "Travelers"), which had insured Cork N Bottle at the time. *Id.* at 2. Specifically, Travelers insured Cork N Bottle under a commercial general liability insurance agreement, policy number I-680-8660L673-ACJ-09 ("the Policy"). Def.'s Mem. Supp. Mot. Summ J. 2, ECF No. 22-1; *see also* Def.'s Mot.

2

Summ. J. Ex. A, ECF No. 22-2 (hereinafter "Def.'s Ex. A").  The scope of the coverage was stated as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> * * *
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence". . . .

Def.'s Ex. A at 00077.  The policy also provides the following definitions:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> * * *
>
> 17. "Property damage" means:
>> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Def.'s Ex. A at 00090-91, 00103 (amending 00091 to include new definition of property damage ).

The Policy also excludes several types of damage from coverage. Under section I.A.2.m of the Policy, "Damage to Impaired Property or Property Not Physically Injured" is excluded from coverage in the following circumstances:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Def.'s Ex. A at 00081. In addition, the Policy also contains an exclusion for damage to the insured's product under section I.A.2.k (hereinafter the "Your Product Exclusion"). Specifically, the Policy excludes coverage for "property damage to 'your product' arising out of it or any part of it." Def.'s Ex. A at 00081. The policy defines "your product" as:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (a) [Cork N Bottle];
    (b) Others trading under [Cork N Bottle's] name; or
    (c) A person or organization whose business or assets [Cork N Bottle has] acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Def.'s Ex. A at 00091.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

## I.      **Choice of Law**

In this diversity action, this Court must apply applicable state law. Here, Defendant Travelers argues that Maryland law applies. Def.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 22. Plaintiff does not dispute this assertion and, in fact, repeatedly cites to Maryland cases. As such, this Court applies Maryland law. *Accord French v. Assurance Company of America*, 448 F.3d 693, 700 (4th Cir. 2006) (applying Maryland law in light of parties' agreement on applicable law).

## II.      **Evidentiary Issue – Rule 408 of the Federal Rules of Evidence**

Attached to Defendant Travelers' Motion for Summary Judgment was a July 26, 2012 letter from Plaintiff M Consulting to Defendant explaining its theory of the case and demanding payment. *See* ECF No. 22-7. The letter suggests that only three hundred (300) crates of sparkling wine had been loaded into the shipping container. In its Response brief, Plaintiff argues that this demand letter is inadmissible under Rule 408 of the Federal Rules of Evidence. Under Rule 408, evidence of "furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise [a] claim" "is not admissible— on behalf of any party— . . . to impeach by a prior inconsistent statement or a contradiction." FED. R. EVID. 408(a)(2). The Rule, however, does not prevent the admission of such evidence "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal

investigation or prosecution." RULE 408(b).

Plaintiff M Consulting argues that "any inferences or conclusions drawn . . . from the letter mailed by Plaintiff to Defendant on July 26, 2012" are inadmissible because "the letter would be covered by the prohibitions of Rule 408."[1] Defendant Travelers, however, argues that the letter is admissible because it "has independent relevance in this claim for alleged breach of indemnity obligation" as a demand letter from Plaintiff against Defendant.[2] Def.'s Reply 2, ECF No. 26. While this Court has not found any cases on point to support Defendant's position, this Court sees no need to address the issue; this Court's decision on the merits of the Motion is unaffected by the consideration or exclusion of the letter.

---

[1] Plaintiff also contends that the letter is inadmissible under Rule 408's "Maryland counterpart." Maryland Rule 5-408 provides:

> (a) The following evidence is not admissible to prove the validity, invalidity, or amount of a civil claim in dispute:
>> (1) Furnishing or offering or promising to furnish a valuable consideration for the purpose of compromising or attempting to compromise the claim or any other claim;
>> (2) Accepting or offering to accept such consideration for that purpose; and
>> (3) Conduct or statements made in compromise negotiations or mediation.
> (b) This Rule does not require the exclusion of any evidence otherwise obtained merely because it is also presented in the course of compromise negotiations or mediation.
> (c) Except as otherwise provided by law, evidence of a type specified in section (a) of this Rule is not excluded under this Rule when offered for another purpose, such as proving bias or prejudice of a witness, controverting a defense of laches or limitations, establishing the existence of a "Mary Carter" agreement, or proving an effort to obstruct a criminal investigation or prosecution, but exclusion is required where the sole purpose for offering the evidence is to impeach a party by showing a prior inconsistent statement.
> (d) When an act giving rise to criminal liability would also result in civil liability, evidence that would be inadmissible in a civil action is also inadmissible in a criminal action based on that act.

Md. Rule 5-408. While this Court has routinely applied the Federal Rules of Evidence to diversity actions, *see, e.g., Osunde v. Lewis*, 281 F.R.D. 250, 259 n.8 (D. Md. 2012) (applying F.R.E. 408 to case based on diversity of citizenship), and application of the Maryland Rules would yield the same result. *See* Md. Rule 5-408(c).

[2] Defendant also cites to *Ausherman v. Bank of Am. Corp.*, 212 F. Supp. 2d 435, 454 (D. Md. 2002), for the proposition that Rule 408 *only* prohibits "the use of settlement statements for the purpose of proving the validity/invalidity or the amount of a disputed claim." *Id.* This Court notes that Rule 408 was modified in 2006, adding the language with respect to impeachment and contradiction. *See* § 408:2, note 33, Maryland Evidence, State & Federal (2013).

### III.  Principles of Maryland Insurance Law

Under Maryland law, insurance agreements are interpreted under normal contract principles.  *See Travelers Indemnity Co. of Am. v. Jim Coleman Auto. Of Columbia, LLC*, 236 F. Supp. 2d 513, 514 (D. Md. 2002); *see also Beretta U.S.A. Corp. v. Federal Ins. Co.*, 117 F. Supp. 2d 489, 493 (D. Md. 2000) (noting that Maryland does not follow the common rule that insurance contracts are to be interpreted against the insurer).  Generally, the interpretation of an insurance contract is a matter for the court, *Jim Coleman Auto.*, 236 F. Supp. 2d at 514, and the terms of the contract will be given their usual, ordinary, and accepted meaning.  *See Beretta*, 117 F. Supp. 2d at 493.  The court's primary goal in interpreting the contract is "to [give] effect [to] the intentions of the parties." *French*, 448 F.3d at 700 (quoting *Nationwide Ins. Co. v. Rhodes*, 127 Md. App. 231 (1999)).  This Court keeps these basic principles in mind in addressing Travelers' Motion for Summary Judgment.

### IV.  Coverage for Plaintiff's Loss under the Policy

The Policy states that Travelers will provide coverage for sums that Cork N Bottle becomes legally obligated to pay as damages because of bodily injury or property damage caused by an "occurrence."  *See* Ex. A at 00077.  In its Motion for Summary Judgment, Travelers argues that the Policy did not provide coverage for the loss in this case because (1) there was no property damage or physical injury; and (2) there was no occurrence.

## A. Property Damage

Under the terms of the Policy, property damage entails "[p]hysical injury to tangible property, including all resulting loss of use of that property"; and "[l]oss of use of tangible property that is not physically injured." Ex. A at 00090-91, 00103 (amending 00091 to include new definition of property damage). Plaintiff argues that the loss involved in this case qualifies under both prongs of the definition.

### 1. Physical Injury to Tangible Property

With respect to the "physical injury to tangible property" prong, Travelers characterizes the issue as whether "disappearance, theft, or conversion of property" can qualify as physical injury. *See* Def.'s Mem. Supp. Mot. Summ. J. 14. Plaintiff argues that conversion of property qualifies as physical loss to tangible property, but that claim is unsupported by any applicable case law.[3] In fact, a variety of courts have come to the

---

[3] The only relevant case that Plaintiff cites in support of this proposition is *U.S. Fid. & Guar. Co. v. Mayor's Jewelers of Pompano, Inc.*, 384 So. 2d 256, 258 (Fla. Dist. Ct. App. 1980) ("When property is stolen, its market value to the one who lawfully possessed it is totally diminished. We therefore hold that theft of personal property is 'property damage' unless a contrary intent is clearly expressed."). However, the insurance agreement at issue in *Mayor's Jewelers* did not define "property damage" in terms of *physical* damage. *See id.* ("If, as USF&G maintains, property is damaged only when it suffers actual, physical damage, it would have been relatively simple to include the word 'physical' in its definition."). Accordingly, the case is distinguishable on its facts.

The only other case cited by Plaintiff does not address the issue of conversion. *See Pittway Corp. v. American Motorists Insurance Co.*, 56 Ill. App. 3d 338, 342 (1977).

opposite conclusion. *See, e.g.,* *State v. Glens Falls Ins. Co.*, 132 Vt. 97, 315 A.2d 257, 258-59 (Vt. 1974) (holding that policy covering "injury to or destruction of property, including the loss of use thereof, caused by [an occurrence]" did not require insurance company to defend insured for loss of an object that had "mysteriously disappeared" absent evidence of the destruction of the object); *B&L Furniture Co. v. Transamerica Ins. Co.*, 257 Or. 548, 480 P.2d 711, 712 (Or. 1971) (finding no duty to defend under insurance policy covering "property damage . . . caused by an occurrence" where insured had repossessed furniture sold to purchaser and was subsequently found liable to the purchaser for conversion).

In addition, Plaintiff seeks to avoid summary judgment by asserting that "there is a genuine issue of material fact as to whether the loss suffered in this case is physical injury to the property of Plaintiff." *See* Pl.'s Opp. 7. Despite Plaintiff's protest, interpretation of insurance contracts is a matter for the Court, *see Jim Coleman Auto*, 236 F. Supp. 2d at 514, and the term "physical damage" is in no way ambiguous. *See* Merriam-Webster Online Dictionary (defining "physical" as "having a material existence," "perceptible especially through the senses and subject to the laws of nature," or "of or relating to material things"); *cf.* Black's Law Dictionary (8th ed) (defining "physical harm" as "[a]ny physical impairment of land, chattels, or the human body"). The inclusion of the term "physical" clearly indicates that the damage must affect the good itself, rather than the Plaintiff's use of that good. No such damage is involved here.[4]

---

[4] This Court recognizes that there is some slight ambiguity regarding the exact fate of the missing cases of sparkling wine. The original complaint filed against Cork N Bottle in the underlying case presented conversion theories:

9. On or about June 7, 2010, at the Port of Baltimore, there was delivered to [the defendant

## 2. Loss of Use

Plaintiff also contends that it suffered "property damage" within the terms of the Policy because it lost the use of the crates of sparkling wine. Again, Maryland courts have not directly addressed the precise issue presented in this case.[5] However, this Court finds persuasive the distinction between "loss of use" and mere "loss of" a good:

---

shipping companies] five hundred cases of sparkling wine, in good order and condition . . . .

10. [The defendant shipping companies] have failed to deliver said shipment to the plaintiff at the Port of Cotonou. or at any location, in the same condition as received, but in short condition . . . .

12. [The defendant shipping companies'] actions aforesaid are a conversion of the shipment to their own use.

18. On or about, June 7. 2010, at the warehouse of CNB in Washington. DC, the 500 cases of Sparkling Wine ("shipment") was loaded into container No. MEDU 1522492 in good order and condition and received by [the defendant trucking company] as an interstate motor carrier for carriage to the Port of Baltimore, Maryland. At the time of receipt seal no. 4057299 was placed on the container.

19. [The defendant trucking company] failed to make delivery of the said shipment in like good order and condition as when shipped, delivered to and received by them, but on the contrary, lost or permitted to be stolen and impaired in value . . . .

26. The alleged loss, damage or other impairment to value to the shipment was caused in whole or in part by CNB's negligent acts, faults, omissions or want of due care in improperly delivering, loading, storing, packaging and/or assuring that the full shipment was received and documented as received by OST.

Def.'s Mem. Supp. Mot. Summ. J. 5-7 (quoting underlying Amended Complaint, attached as Ex. B to Defendant's Memorandum (ECF No. 22-3)). At her deposition, Ms. Mercy Ogbebor, the corporate designee for Plaintiff, suggested something had happened somewhere in transit. *See* Ogbebor Depo. 40:15-41:2, ECF No. 22-4 (stating that Ogbebor "knew that something happened along the line between the time of purchase and the time the goods got to Contonou" because the seal number provided by Cork N Bottle's employee was not the same as the seal number on the other documents). The only directly contrary evidence before the Court is Plaintiff's July 26, 2012 letter to Defendant, which suggests that the seal numbers were consistent and that the full order had not been loaded into the shipping container; however, that letter is not considered by the Court at Plaintiff's own request. In either scenario, however, the loss to the Plaintiff arose from Cork N Bottle's failure to deliver the full shipment amount. As such, there is no need for this Court to precisely determine where in the process the missing sparkling wine went missing.

[5] The closest case is *Sheets v. Brethern Mut. Ins. Co.*, 342 Md. 634, 645-46 (Md. 1996), where the Court of Appeals of Maryland addressed whether the defendant insurance company had a duty to defend against an action for alleged negligent misrepresentation regarding the status of a septic system that ultimately caused the system to fail and to damage nearby property. 342 Md. at 645. Specifically, the buyers had relied upon the representation that the septic system was in good working order, but the septic system subsequently began leaking and flooded a walk area. *Id.* at 637. Thereafter, the system was condemned and had to be replaced. *Id.* The Court of Appeals held that the loss of use of the septic system constituted property damage under the terms of the policy. *Id.* at 645.

The correct analysis of loss of use coverage is set forth in *Collin v. American Empire Insurance Co.*[, 21 Cal. App. 4th 787, 26 Cal. Rptr. 2d 391, 408-09 (2d Dist. 1994),] The issue before the court was whether a claim for conversion of property constitutes a claim for loss of use of such property. The court held that it does not.

> "Loss of use" of property is different from "loss" of property. To take a simple example, assume that an automobile is stolen from its owner. The value of the "loss of use" of the car is the rental value of a substitute vehicle; the value of the "loss" of the car is its replacement cost.

3 Insurance Claims and Disputes § 11:1 (6th ed.). In this case, Plaintiff has made no allegation of specific loss of use damages and no evidence has been proffered to support such a contention.[6] Instead, Plaintiff merely attempts to collect upon a default judgment against Cork N Bottle, the insured, in a suit demanding replacement costs and economic loss.[7]

## B. Occurrence

Under the terms of the Policy, Cork N Bottle's insurance coverage only extended to property damage "caused by an occurrence." Ex. A at 00077. The Policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the

---

[6] In this action, Plaintiff seeks $103,680.80. *See* Pl.'s Compl., ECF No. 2. In the action before the Maryland state court, Plaintiff sought "$64,776, invoice value of the missing goods, lost profits in the amount of $28,824, pro-rated freight of $1,520 and pre-judgment interest to be determined at trial." Def.'s Mot. Summ. J. Ex. B ¶ 31. Presumably, the discrepancy is due to the award of interest; however, the order granting default judgment against Cork N Bottle, which Plaintiff attached to its Complaint, is illegible. *See* Pl.'s Compl. Ex. 1, ECF No. 2-1.

[7] As noted above, Plaintiff sought "$64,776, invoice value of the missing goods, lost profits in the amount of $28,824, pro-rated freight of $1,520 and pre-judgment interest to be determined at trial" in the underlying suit against Cork N Bottle in Maryland state court.

same general harmful conditions." Ex. A at 00090. The term "accident" is not defined in the Policy.

Despite the lack of an express definition, various courts have construed the term "accident" in similar insurance agreements. In *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 651 (1996), the Court of Appeals of Maryland "adopted a dictionary definition of the term accident as, in pertinent part, an event that takes place without one's foresight or expectation." *Id.* (internal quotation marks omitted) (citing *Harleysville v. Harris & Brooks*, 248 Md. 148 (1967); Webster's Twentieth Century Dictionary (1950)). Specifically, the Court of Appeals stated that:

> [W]e hold today that an act of negligence constitutes an "accident" under a liability insurance policy when the resulting damage was " 'an event that takes place without [the insured's] foresight or expectation.' " *Harleysville*, 248 Md. at 154, 235 A.2d at 559 (citation omitted). In other words, when a negligent act causes damage that is unforeseen or unexpected by the insured, the act is an "accident" under a general liability policy.

*Id.* at 652. Thus, "the *Sheets* analysis directs . . . [a court's] attention to the *nature of the damages*." *Lerner Corp. v. Assurance Co. of America*, 120 Md. App. 525, 536 (Md. Ct. Spec. App. 1998) (emphasis added).

In *Lerner Corp. v. Assurance Company of America*, the Court of Special Appeals of Maryland addressed the question whether an insured was "entitled to indemnity for the costs associated with the contractually obligated repair of a latent construction defect under the comprehensive general liability policies." *See* 120 Md. App. at 527. Specifically, the insured construction management companies had sold a building which had a defective façade. *Id.* at

13

528. After the defect was discovered, the buyer rescinded the sale with respect to the façade, and the insured construction management companies made the necessary repairs. *Id.* at 529. Thereafter, the insured construction management companies sought indemnity from their insurance companies under their commercial general liability policies. *Id.* Applying the Court of Appeals' analysis in *Sheets*, the Court of Special Appeals stated that "[i]f the damages suffered related to the satisfaction of [a] contractual bargain, it follows that they are not unforeseen." *Id.* at 536. Accordingly, the Court of Special Appeals held that the insurance companies were not required to indemnify the insured construction managers because the costs to repair the defective façade were incurred pursuant to the construction managers' contractual obligations. *Id.* at 538.

In this case, the event in question relates to Cork N Bottle's failure to ensure delivery of all of the sparkling wine that had been ordered. In Plaintiff's view, this failure qualifies as an occurrence under the Policy:

> [Cork N Bottle's] conduct in this case can best be described as an accident. It would appear that [Cork N Bottle] did not intend that the shipment of the sparkling wine would be short. In addition, it is not reasonable to assert that Plaintiff could have or should have foreseen the failure of [Cork N Bottle] to properly monitor and verify the shipment contents or to put safeguards in place to guard against their failure in this case. Unlike Defendant's cited examples, the loss at issue in this case had nothing to do with a defective product or disappointment of a purchaser under a contract. The issue in this case is the negligent conduct of Defendant, independent of the terms of the contract. As a consequence, Plaintiff asserts that a genuine issue of material fact exists as to whether the loss at issue was in fact an occurrence under the policy.

14

Pl.'s Resp. 5, ECF No. 25. This argument is unavailing. Plaintiff attempts to cast the issue as a matter of Cork N Bottle's negligent conduct. However, Plaintiff has not identified any duty that Cork N Bottle owed to Plaintiff other than the duty arising from the contract between the two parties. Accordingly, it is quite clear that, despite Plaintiff's protests, this is indeed a case of a disappointed purchaser under a contract. Just as the insured construction management companies failed to deliver a defect-free building in *Lerner*, here Cork N Bottle failed to deliver the full shipment. Accordingly, the loss claimed by Plaintiff was foreseeable and, therefore, not accidental. *See Lerner*, 120 Md. App. at 536; *see also French v. Assurance Co. of America*, 448 F.3d 693, 702 (4th Cir. 2006) (quoting *Lerner*, 120 Md. App. at 536); *Travelers Indem. Co. of Am. v. Coleman Auto. of Columbia, LLC*, 236 F. Supp. 2d 513, 515-16 (D. Md. 2002) ("It is clear law that a loss of money by way of fraud or trick, or other purely economic loss resulting from the insured's conduct, without any damage or injury to tangible property, is not an accident or property damage as defined by this and other such policies." (internal quotation marks omitted)).[8] As such, the loss at issue in this case was not due to an occurrence under the terms of the Policy.

## V.    Policy Exclusions

Assuming *arguendo* that Plaintiff's loss is within the general scope of coverage, the loss is excluded from coverage under section I.A.2.m of the Policy, which excludes coverage for

---

[8] Moreover, while negligence claims are not barred by the occurrence language of commercial general liability policies under *Sheets*, one cannot simply disguise a contract claim as a negligence claim. *See Travelers Indem. Co. of Am. v. Coleman Auto. of Columbia, LLC,* 236 F. Supp. 2d 513, 516 (D. Md. 2002) ("It is the substance of the underlying claim, not its label, that controls in duty-to-defend and coverage cases.").

damage to property "that has not been physically injured, arising out of . . . [a] delay or failure by [Cork N Bottle] or anyone acting on [Cork N Bottle's] behalf to perform a contract or agreement in accordance with its terms." Ex. A at 00081. This exclusion applies to the situation presented here. Under the Policy terms, there is no coverage where the damage "aris[es] out of . . . a delay or failure by [Cork N Bottle] . . . to perform a contract or agreement in accordance with its terms." Ex. A at 00081. Under Maryland law, this "arising out of" language is to be interpreted in accordance with its "common understanding, namely, to mean originating from, growing out of, flowing from, or the like." *Northern Assurance Co. v. EDP Floors, Inc.*, 311 Md. 217, 230, 533 A.2d 682 (1987). Moreover, the language "is broadly construed and exclusion clauses bearing the phrase are generally deemed to be triggered upon a showing of 'but for' causation." *Insights Trading Group, LLC v. Federal Ins. Co.*, Civ. A. No. RDB-10-340, 2010 WL 2696750, at *5 (D. Md. July 6, 2010).

Plaintiff attempts to distinguish its claim from the reasoning in these cases, arguing that:

> Here, Plaintiff's loss does not arise out of any contract and is not limited by the chain of events discussion in *EDP* noted above. Rather, the loss is an independent negligence action whereby the injuries arise independent of the contract breach and relate more to services provided by [Cork N Bottle] and not a contract entered into between Plaintiff and [Cork N Bottle]. In other words, the breach of contract is not the instrumentality of the injury and the negligence is not an event further back in a sequence of events ending with or including excluded liability under the policy.

Pl.'s Resp. 10, ECF No. 25. Indeed, Plaintiff's Complaint characterizes this case as a "direct action" based on an "underlying claim [involving] . . . a case of negligence on the part of [Cork N Bottle], which arose when an international shipment of sparkling wine purchased by the plaintiff was mishandled and partially destroyed." Pl.'s Compl. ¶¶ 1, 2.

Nevertheless, Plaintiff's characterization of the suit is not dispositive of the matter. As this Court has previously noted, under Maryland law, the theory of liability employed by the Plaintiff does not affect the analysis. *See Insights Trading Group*, 2010 WL 2696750, at *5 ("Courts have found that litigants cannot skirt around an exclusion clause merely by relying upon certain alternative theories; indeed, an exclusion clause must apply 'irrespective of the theory of liability by which the [the claimant] seeks redress for his injury, as the ['arising out of'] policy exclusion is not concerned with theories of liability.'" (quoting *EDP Floors*, 311 Md. at 230, 533 A.2d 682.)); *Travelers Indem. Co. of Am. v. Coleman Auto. of Columbia, LLC*, 236 F. Supp. 2d 513, 516 (D. Md. 2002) ("It is the substance of the underlying claim, not its label, that controls in duty-to-defend and coverage cases."). Rather, the main focus is the "instrumentality of the injury." *Id.* The exclusion at issue here is directed at an injury arising from the deficient performance of a contract. As noted above, despite Plaintiff's characterization of this action as one involving negligence, the loss for which Plaintiff seeks to recover is the result of Cork N Bottle failing to perform under the contract. *Cf.* Def.'s Mot. Summ. J. Ex. B ¶ 25 ("[Cork N Bottle] owed to Plaintiff *as purchaser of the shipment*, a duty of due care . . . ." (emphasis added) (quoting Plaintiff's Complaint in underlying

Maryland state action, *M Consulting and Export, LLC v. Wine & Spirits Expo, LLC*, NO. 24-C-11-2261)).[9]

CONCLUSION

For the reasons stated above, Defendant Travelers Casualty Insurance Company of America's Motion for Summary Judgment (ECF No. 22) is GRANTED.

A separate Order follows.

Dated:      February 27, 2014              \_\_\_\_\_/s/_____

                                           Richard D. Bennett
                                           United States District Judge

---

[9] While the same basic reasoning would apply to the "arising out of" language contained in the "Your Product" Exclusion under section I.A.2.k of the Policy, there is no Maryland case law holding that such exclusions apply to the type of factual scenario raised by this case. In light of this fact, and because this Court has already determined that (1) the Policy does not cover Plaintiff's loss and (2) section I.A.2.m's exclusion applies, this Court will not reach the issue whether Plaintiff's suit is also precluded by the "Your Product" Exclusion.